UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WENDALL HALL,

    Plaintiff,

v.                                  Case No. 2:22-cv-320-JES-KCD

COURTNEY JONES AND
H. HOUSTON,

    Defendants.

## OPINION AND ORDER

This cause is before the Court on consideration of a motion to dismiss filed by Defendants Courtney Jones and H. Houston (Doc. 19) and Plaintiff Wendall Hall's response in opposition to the motion. (Doc. 20). After careful consideration of the Complaint and Hall's response, the Court grants the defendants' motion and dismisses this case without prejudice as premature and failing to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### I.  Background and Pleadings

Hall, a resident of the Florida Civil Commitment Center ("FCCC"), initiated this action by filing a pro se civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). Hall alleges the following in his complaint:[1] On April 18, 2022, Hall received a

---

[1] The Court presents the facts as alleged in Hall's complaint (Doc. 1), and at this stage, his factual allegations are accepted as true. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453

behavior management report ("DR") charging him with disorderly conduct. (Doc. 1 at 3, ¶ 4). Captain King noted on the DR that Hall wanted to attend the DR hearing. (Id. at 4, ¶ 5). Later though, Hall was directed to return the DR because it contained an error. (Id. ¶ 6). Hall returned the DR and was told that a corrected DR would "include all the previous statements and information" from the earlier one. (Id. ¶ 7). He never signed a refusal stating that he would not attend the DR hearing to be held on April 27, 2022, and he did not inform staff that he would not attend the hearing. (Id. ¶ 8).

On April 27, 2022, Hall resided in Sea Dorm. (Doc. 1 at 4, ¶ 9). No notice was posted in the dorm that Hall was supposed to attend the DR hearing. (Id.) No official called him to attend the meeting, and the intercom system in Sea Dorm was malfunctioning on that day, causing announcements to come through unclearly. (Id. at 5, ¶ 11). Therefore, Hall did not hear his name called

---

(2006) (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And even in the case of *pro se* litigants, the court does not have "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs. V. Cnty. Of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), overruled on other grounds by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). Nevertheless, as best it is able, the Court extracts Hall's "well-pleaded factual allegations" from his complaint to "determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S.at 679.

2

for the DR hearing. (Id. ¶ 11). Hall also asserts, without explanation, that the FCCC staff "never informed [him] twice of the time of the DR hearing on April 27, 2022." (Id. ¶ 12).

Hall went to the DR hearing room at 9:00 am, but because no official was present in the hearing room and the lights were off, he went back to his dormitory and took a shower. (Doc. 1 at 5, ¶ 13). After his shower, he applied shaving cream to his face. (Id.) The shaving cream began to burn his face. (Id. at 6, ¶ 14). Thereafter, an FCCC officer came to Hall's room and asked whether he wanted to attend the DR hearing. (Id.) Hall told him that he wanted to attend, but would need a "few minutes" to take off the shaving cream and apply medicated ointment to his face. (Id. ¶ 15). The official told Hall that he would alert the DR team that he needed some time to attend the hearing. (Id. ¶ 16). Hall waited fifteen minutes to remove the shaving cream and then applied ointment, put on clothing, and went to the DR hearing room. (Id. at 6-7, ¶ 17). However, when he arrived, nobody was there. (Id. at 7, ¶ 18). Hall assumed the hearing had been rescheduled. (Id.) However, Defendants Jones and Houston conducted the hearing without Hall's presence, found him guilty of disorderly conduct, and restarted his CARE level at level three as a sanction. (Id. at 9, ¶ 19).

Hall asserts that the defendants violated procedural due process by holding the hearing without his presence, which has

3

caused him "severe mental anguish, mental distress and severe depression." (Doc. 1 at 8, ¶ 19). He claims that he would have obtained a CARE level 4 on May 1, 2022 if he had not received the DR for disorderly conduct and that he is not allowed to possess a personal television or obtain a job, which are privileges afforded to residents at CARE level 4. (Id. at 8-9, ¶ 19).[2] He also alleges that the State Attorney could use the DR as proof to show the civil commitment court that Hall's mental condition has not changed, which could extend his civil commitment. (Id. at 9, ¶ 20). Hall seeks five million dollars in compensatory damages and another five million dollars in punitive damages. (Id. at 11, ¶ 25). He also seeks to have his DR overturned. (Id. ¶ 27).

The defendants move to dismiss this action for two primary reasons. (Doc. 19). First, they argue that Hall's claims are premature because he has not alleged that the disciplinary charges terminated in his favor. (Id. at 6-7). Next, they assert that Hall has not alleged facts sufficient to show that he was deprived of a protected liberty interest arising from the Due Process Clause. (Id. at 7-8). Hall has filed a response to the motion, in which he generally asserts that it should not be granted.[3] (Doc. 20).

---

[2] Hall asserts that he needed to remain "DR free for 6 months as a care level 3" to be entitled to the privileges afforded those in care level 4. (Doc. 1 at 9-10).

[3] Very little of Hall's 14-page response consists of arguments

4

## II.  Standard of Review

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")  However, the Supreme Court has explained that factual allegations must be more than speculative as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

---

directed at those raised by the defendants.  (Doc. 20).  The remainder can loosely be described as legal argument that consists primarily of relevant and non-relevant case citations and text cut and pasted from court opinions.

5

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Twombly, set forth a two-pronged approach to evaluating motions to dismiss. First, a reviewing court must determine whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, the court must determine whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 679. Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### III. Discussion

**A. Hall's civil rights complaint is subject to dismissal as premature.**

The defendants argue that Hall's complaint is premature because he has not alleged that the DR was terminated in his favor. (Doc. 19 at 7). They cite Middle District of Florida cases Kleparek v. Florida Civil Commitment Center, No. 2:13-cv-490-FtM-38CM, 2014 WL 7218881 (M.D, Fla. Dec. 17, 2014) and Douse v. Budz, No. 2:09-cv-596-FtM-29DNF, 2009 WL 3256328 (M.D. Fla. Oct. 7, 2009) to support their arguments.[4] Upon review of the complaint and

---

[4] In Kleparek, the plaintiff sought only injunctive relief (the expungement of the DR), and in Douse, the plaintiff alleged that the disciplinary report had been completely fabricated by the defendants, which implicated the supreme court holdings in Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisak, 520 U.S. 641

6

caselaw applicable to prisoners who allege due process violations in prison disciplinary proceedings, the Court concludes that Hall's complaint must be dismissed without prejudice as premature because success on this claim would necessarily imply the invalidity of his punishment.[5]

In Heck v. Humphrey, the Supreme Court held that a state prisoner's claim for damages is not cognizable in a § 1983 action if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. 477, 487 (1994). The Supreme Court later expanded the Heck bar to a

---

(1997). While these cases are instructive, neither mandates automatic dismissal of this case.

[5] The Court recognizes that Hall is not a prisoner. And the Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 322 (1982). Indeed, the involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. The Eleventh Circuit has similarly held that "Youngberg establishes that the due process rights of the involuntarily civilly committed are at least as extensive as the Eighth Amendment rights of the criminally institutionalized, and therefore, relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006) (quoting Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996) (quotation marks omitted)). Therefore, the case law that has developed in the prison context also sets forth the contours of the due process rights of the civilly committed. Id.

prisoner's challenge to disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 643 (1997). In Balisok, the Court held that a prisoner's claim "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Id. at 648.

A plaintiff need not seek only monetary damages or the reinstatement of good time credits for Heck to apply; the test is whether a civil judgment in the plaintiff's favor would necessarily negate the underlying punishment. See Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). See also Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, Heck kicks in and bars his civil suit.").

Here, Hall alleges that he was deprived of due process after receiving a DR and seeks damages for the punishment that was imposed in the disciplinary proceeding as well as expungement of the DR. As noted by the defendants, Hall does not assert that the DR at issue in this case has been overturned administratively, in state court, or through federal habeas relief. A finding that Hall did not receive due process in this action would be inconsistent with the punishment imposed on him in the disciplinary proceeding—the re-start of his CARE level. Therefore, Hall's §

1983 action is not cognizable in light of Heck and Balisok unless, and until, Hall has the disciplinary report overturned, which he does not allege has occurred. State differently, success on this claim necessarily implies the invalidity of the penalty imposed on Hall, and therefore his complaint is subject to dismissal as premature.

**B.   Hall has not stated a procedural due process claim.**

The defendants alternatively argue that even if Hall can bring this claim in a section 1983 complaint without first having his DR overturned, the complaint is subject to dismissal for failure to state a claim on which relief may be granted. (Doc. 19 at 7). Specifically, the defendants argue that Hall was not deprived of a protected liberty or property interest as a result of receiving the DR. (Id.) The Court agrees.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court described the minimum due process requirements for prisoners who receive discipline that results in the loss of good-time credits or the imposition of solitary confinement. These protections include advance written notice of the charges, adequate time to prepare a defense, an opportunity to present witnesses and evidence, and a written statement by the factfinder explaining the reasons for the decision. Id. Here, Hall asserts that the defendants violated Wolff because he did not have an opportunity to present witnesses and evidence at the hearing on

9

his DR, presumably because he was unaware of the precise time the hearing would occur. Moreover, when he was eventually notified, the defendants did not allow him sufficient time to remove the shaving cream from his face and apply ointment before holding the hearing without him present.

However, a defendant's failure to follow each Wolff procedural requirement violates the Constitution only when the failure results in the deprivation of the plaintiff's interest in life, liberty, or property. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.") Thus, the threshold question for any due process claim is whether the plaintiff was deprived of the type of "life, liberty, or property" interests protected by the due process clause. Kentucky v. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

Hall asserts that he has alleged a constitutionally protected liberty interest because FCCC detainees with recent DRs are not allowed the same privileges at the FCCC (such as owning a personal television or getting a paid job) as detainees who do not receive DRs. (Doc. 1 at 10). Specifically, based on the allegations in the complaint, the DR caused Hall's CARE level to restart at the beginning of level three, even though his CARE level was due to

increase from three to four in less than a month. He asserts that a resident must go six months without a DR to receive the increased privileges attendant with CARE level four. (Id. at 9). Under these alleged facts, Hall was—at most—delayed from receiving his CARE level 4 for a little more than five months.[6]

Hall's temporary delay of his rights to seek paid employment at the FCCC and to possess a personal television—privileges presumably allowed at CARE level 4, but not level 3—does not evince a denial of adequate food, exercise, medical care, sanitation, or any other circumstance that, in the Court's view, would constitute an atypical and significant hardship in relation to the ordinary incidents of resident life at the FCCC. See Sandin, 515 U.S. at 486 (finding that two 30-day periods of administrative confinement did not implicate a liberty interest because it was not an "atypical, significant deprivation in which a State might conceivably create a liberty interest."); Thompson, 490 U.S. at 460 (concluding that an inmate does not have a protected interest in visitation arising from the Due Process Clause); Moore v.

---

[6] Hall also speculates that the discipline reports could be used in the future to deny his release from the FCCC. (Doc. 1 at 9). However, this is not the type of liberty interested protected by, and requiring, a Wolff-style hearing. See Sandin v. Conner, 515 U.S. 472, 487 (1995) (rejecting a prisoner's due process claim for failure to allege a liberty interest, in part, because "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause[.]").

Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, No. 06-0896-WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest).

Simply put, the sanction imposed on Hall as a result of the DR (a restart at CARE level three) did not implicate due process concerns. For these reasons, the Court concludes that Hall has not shown the existence of a protected liberty interest, and as a result, he does not state a procedural due process claim.[7] Fed. R. Civ. P. 12(b)(6).

### IV. Conclusion

Hall's complaint is both premature and fails to state a claim on which relief may be granted. The Court will not order an

---

[7] More than six months have passed since Plaintiff received the DR at issue. As a result, Plaintiff is no longer on a reduced CARE level as a result of the DR. Because this case is dismissed as premature and for failure to state a claim, the Court will not consider whether Plaintiff's claim for injunctive relief is now moot. Nor will the Court consider whether the defendants are entitled to qualified immunity in their individual capacities on the basis that no clearly established Supreme Court or Eleventh Circuit case suggests that a reduction in a civilly committed plaintiff's privileges (or extension of a lower CARE level) implicates the Due Process Clause of the United States Constitution.

amended complaint because—even liberally construed—the allegations raised in the complaint do not present a situation "[w]here it appears a more carefully drafted complaint might state a claim." See Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991).

Accordingly, it is now **ORDERED**:

1. The motion to dismiss (Doc. 19) filed by Defendants Courtney Jones and H. Houston is **GRANTED** as to all claims raised in the complaint.

2. With no remaining claims or defendants, the **Clerk** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE AND ORDERED** in Fort Myers, Florida on the   9th   day of June 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies to:    Wendall Hall, counsel of record

13